# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LUCIANO SISTO, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 11 CV 7030 |
| NXP SEMICONDUCTORS USA, INC., a Delaware corporation, d/b/a NXP Semiconductors, | ) Judge John Z. Lee ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Luciano Sisto, a former employee of NXP Semiconductors USA, Inc. ("NXP"), has sued NXP alleging that he was not rehired based on his age in violation of the Age Discrimination and Employment Act of 1967 ("ADEA"). For its part, NXP contends that Sisto was not rehired because the job was not available when he inquired about it and the candidate selected for it was more qualified than Sisto. NXP has moved for summary judgment. For the reasons stated herein, the Court grants NXP's motion.

## Facts

The following facts are undisputed. In 1994, Luciano Sisto, who was born on June 15, 1950, began working at NXP, formerly Phillips Semiconductors ("Phillips"), as a Regional Distribution Manager. (Pl.'s LR 56.1(b)(3)(C) ¶ 1; Defs.' LR 56.1(a)(3) ¶ 6.) In that role, Sisto gave product presentations to independent distributors and monitored and reviewed the distributors' performance. (Defs.' LR 56.1(a)(3) ¶ 6.)

In 2001, Sisto's job title changed to Global Account Manager. (*Id.* ¶ 7.) As a Global Account Manager, Sisto worked directly with customers, selling them NXP products and

1

matching NXP's product development to meet their needs. (*Id.* ¶¶ 7-8.) One customer with whom Sisto worked was Tellabs, a telecommunications company based in Naperville, Illinois. (*Id.* ¶ 8.) While Sisto was responsible for selling NXP products to Tellabs, NXP's sales to Tellabs fluctuated between $50 million and $100 million per year. (*Id.* ¶ 7.) By the end of Sisto's time as NXP's account manager for Tellabs, however, NXP's sales to Tellabs fell to around $10 million per year. (*Id.*)

In 2006, Sisto's title changed from Global Account Manager to Account Manager, but he continued to promote NXP products to customers. (*Id.* ¶ 9.) Sisto contends, and NXP disputes, that while Sisto was employed at NXP he attended presentations made by Mark Bruno, NXP's Vice President of Sales, at which Bruno stated that the NXP sales force was too old and that management needed to "enliven" the sales force and reduce the average. (Pl.'s LR 56.1(b)(3)(C) ¶ 11.)

In November 2008, NXP terminated Sisto and other sales employees as part of a reduction in force. (*Id.* ¶¶ 9-10.) In connection with his termination, Sisto signed a separation agreement in which he released NXP from any and all then-existing claims, including any clams of age discrimination, in exchange for substantial consideration. (*Id.* ¶ 10.)

In late 2008, NXP hired Michael Noonen as its Global Head of Sales. (*Id.* ¶ 11.[1]) In 2009, Noonen led a concerted effort to improve NXP's global sales by bringing in a more technical sales force. (*Id.* ¶ 12.) To do this, NXP reorganized its global sales and marketing organization throughout 2009, 2010, and 2011. (*Id.*) Prior to the restructuring, many of NXP's Account Managers managed distribution accounts, a role that did not require the same level of

---

[1] Plaintiff objects to Defendant's LR 56.1(a)(3) ¶ 11 but does not dispute that Noonen was hired as NXP's Global Head of Sales. "[A] general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial." *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). Because Plaintiff cites no evidence disputing that Noonen was hired as NXP's Global Head of Sales, that fact is deemed admitted for the purposes of this motion.

2

technical expertise necessary to sell directly to customers. (*Id.* ¶ 15.[2]) Those Account Managers who did work directly with NXP's customers often relied upon the technical expertise of Field Application Engineers (FAEs) who accompanied them on sales calls. (*Id.*) As part of the restructuring, NXP eliminated the Account Manager position and laid off many Account Managers. (*Id.* ¶ 16.) NXP also converted some Account Managers to Field Sales Engineers ("FSEs"). (*Id.*) FSEs, in contrast to Account Managers, typically worked directly with NXP's individual customers, went on customer visits alone, without an FAE, and were expected to design custom semiconductor solutions for their customers' specific products, computers, and other systems. (*Id.* ¶ 17.[3]) Because FSEs did not need FAEs, transitioning from Account Managers to FSEs enabled NXP to more efficiently serve its customers. (*Id.* ¶ 18.[4])

---

[2] Plaintiff objects to Defendant's LR 56.1(a)(3) ¶ 15 by stating that, while he was an Account Manager, he had "enough technical training that he was able to do his job even when there was no [Field Application Engineer (FAE)] in the marketplace to help support the technical requirements of the sales effort." Pl.'s LR 56.1(b)(3)(B) ¶ 15. Plaintiff does not dispute, however, that as a general matter Account Managers who managed distribution accounts were not required to have the same technical expertise as Account Managers who worked directly with individual customers. Nor does Plaintiff dispute that FAEs typically accompanied those Account Managers on sales calls. Thus, those facts are deemed admitted for the purposes of this motion.

[3] Plaintiff denies Defendant's LR 56.1(a)(3) ¶ 17 by stating "[w]hile he was an Account Manager, Sisto was able to perform his job even when there was no FAE in the marketplace to help support the technical requirements of the sales effort." Pl.'s LR 56.1(b)(3)(B) ¶ 17. Plaintiff does not dispute, however, that after the restructuring at NXP, FSEs typically went on customer visits alone and were expected to design technical solutions for their customers. Thus, those facts are deemed admitted for the purposes of this motion.

[4] Plaintiff denies Defendant's LR 56.1(a)(3) ¶ 18 by stating "[o]n March 8, 2011, Moss led Sisto to believe that the open FSE position was the same job as the Account Manager position and would have the same responsibilities." Pl.'s LR 56.1(b)(3)(B) ¶ 18. Plaintiff's subjective belief about an FSE's responsibilities, without more, is not sufficient to dispute the actual responsibilities of the FSE position. *See Ceruitti v. BASF Corp.*, 349 F.3d 1055, 1064 (7th Cir. 2003) ("Employers, not employees or courts, are entitled to define the core qualifications for a position, so long as the criteria utilized by the company are of a nondiscriminatory nature.") Thus, the fact that hiring FSEs instead of Account Managers enabled NXP to more efficiently serve its customers is deemed admitted for the purposes of this motion.

On February, 28, 2011, Bradley Moss, NXP's District Sales Manager for the East Central District, which includes Chicago, and Bradley Teague, Moss's boss and NXP's Area Sales Director for the Central Region, became aware that Chris Porter, an FSE, was resigning. (*Id.* ¶¶ 21, 23.[5]) Teague immediately emailed Mark Lunsford, NXP's Vice President of Sales and Marketing for the Americas, and Jo Ann Kapps, NXP's Director of Human Resources for the Americas, as well as Noonen and Moss. (*Id.* ¶ 24.) In the email, Teague explained that Porter's "[d]ecision was based on his concern that he no longer fit the mold of NXP" because "Chris does not have a [BS]EE degree and was concerned about his long term viability." (*Id.*[6])

That same day, Teague and Moss discussed the need to fill the open FSE position quickly. (*Id.* ¶ 25.) Teague contacted Jeff Hassan, an FAE who had worked with Porter, to see if Hassan had any recommendations for potential candidates to fill the position. (*Id.* ¶ 26.[7]) Teague asked Hassan because Hassan would be working with the new FSE and Teague respected and trusted Hassan's opinion. (*Id.*)

---

[5] Plaintiff objects to Defendant's LR 56.1(a)(3) ¶ 23 because "the statements made by Porter to Moss and Teague are inadmissible hearsay." Pl.'s LR 56.1(b)(3)(B) ¶ 23. Hearsay is an out of court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Here, however, Porter's February 28, 2011, phone calls to Moss and Teague to inform them that he was resigning are not being offered for the truth of the matter asserted, but are being offered to show Moss and Teague's belief that Porter's FSE position was being vacated. Thus, Porter's statements to Moss and Teague are not hearsay and are deemed admitted for that purpose. *See United States v. Macari*, 453 F.3d 926, 941 (7th Cir. 2006) ("statements that are offered for context, and not for the truth of the matter asserted, are not hearsay.")

[6] Plaintiff objects to Defendant's LR 56.1(a)(3) ¶ 24 because "[t]he statements made by Porter contained in Teague's email are inadmissible hearsay." Pl.'s LR 56.1(b)(3)(B) ¶ 24. But Teague's email is not being offered for the truth of the matter asserted, but is being offered to show Teague's own belief as to the reasons for Porter's resignation. Thus, Porter's statements to Teague are not hearsay and are deemed admitted for that purpose.

[7] Plaintiff objects to Defendant's LR 56.1(a)(3) ¶ 26 because "[t]he statements made by Hassan to Teague are inadmissible hearsay." Pl.'s LR 56.1(b)(3)(B) ¶ 26. Defendant's LR 56.1(a)(3) ¶ 26, however, does not contain any statements made by Hassan to Teague. Therefore, the facts in Defendant's LR 56.1(a)(3) ¶ 26 are deemed admitted for the purposes of this motion.

Hassan recommended Neeraj Bhatti and sent Bhatti's resume to Teague. (*Id.* ¶ 27.[8]) At the time, Bhatti, who was born on December 6, 1981, was employed at Texas Instruments and had previously sold Texas Instruments products to Hassan in connection with Hassan's former job as an engineer at Motorola. (*Id.*) In addition to forwarding Bhatti's resume, Hassan also sent Teague several short paragraphs favorably describing Bhatti. (*Id.* ¶ 28.) Hassan noted that Bhatti had an "excellent reputation" and had "invented" a successful sales program at Texas Instruments. (*Id.*) Hassan also wrote that Bhatti had "great interpersonal skills and can adapt if needs be," that he and Bhatti had always gotten along on a personal level, and that Bhatti "sets his goals high and expects to meet them." (*Id.*) Finally, Hassan noted that Bhatti had "graduated with a BSEE, started as a design engineer, and worked his way into sales." (*Id.*)

Teague and Moss reviewed Bhatti's resume and decided to interview him because of Hassan's positive recommendations, Bhatti's BSEE degree, and his educational and employment experience with analog circuitry. (*Id.* ¶¶ 29,[9] 30.[10]) Bhatti graduated from college with a

---

[8] Plaintiff objects to Defendant's LR 56.1(a)(3) ¶ 27 because "[t]he statements made by Hassan to Teague are inadmissible hearsay." Pl.'s LR 56.1(b)(3)(B) ¶ 27. Hassan's statements, however, are not being offered for the truth of the matter asserted, but to show Teague's own belief as to Bhatti's qualifications. Thus, Hassan's statements to Moss and Teague are not hearsay and are deemed admitted for that purpose. The same reasoning applies to Defendant's LR 56.1(a)(3) ¶ 28.

[9] Plaintiff "denie[s] that Teague and Moss decided to interview Bhatti because his BSEE degree qualified him for the FSE position. A BSEE degree was not a qualification for the position as other employees had been hired or performed the position without such a degree." Pl.'s LR 56.1(b)(3)(B) ¶ 29. Plaintiff's dispute about the qualifications of the FSE position, however, does not dispute Moss's subjective reasons for wanting to interview Bhatti. Moss stated in his deposition that Bhatti's BSEE degree was one reason he wanted to interview Bhatti. Moss Dep. 84: 1-2. Regardless of whether the BSEE degree was a requirement for the FSE position or whether other employees had been hired or performed the FSE position without a BSEE, Moss's subjective belief that Bhatti's BSEE degree was a reason to interview him cannot be disputed by Plaintiff's conclusory contention that Moss's stated reason is a lie. Such argument is inappropriate in a Local Rule 56.1 response. *See e.g.*, *Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001) (self-serving legal conclusions are not statements of fact and do not suffice as a proper response to a Rule 56.1 statement); *Malec*, 191 F.R.D. at 584 (noting that Local Rule 56.1(b)(3)(B) responses are "not the place for purely argumentative denials.") Therefore, the fact that Moss wanted to interview Bhatti in part because of

concentration in "Analog IC [Integrated Circuit] Design" and NXP had just been rebranded as a High Performance Mixed Signal company, which meant that its workforce needed expertise in both digital and analog circuitry. (*Id.*) As of February 2011, the employees in NXP's Central Region primarily had only digital experience. (*Id.*) Thus, Teague and Moss felt that Bhatti's analog experience would be "very complimentary" to the existing workforce. (*Id.*)

After deciding to interview Bhatti, Teague contacted Kapps and asked her to open a requisition form for Porter's former position. (*Id.* ¶ 31.) The requisition form is used by NXP's recruiters to track candidates and obtain internal approvals needed to fill an open position. (*Id.*) The requisition form stated that the position required an "[e]ngineering background," including a "BSEE equivalent" degree. (*Id.* ¶ 32.)

On March 2, 2011, Teague, Moss, and Hassan interviewed Bhatti. (*Id.* ¶ 33.[11]) After the interview, Teague and Moss discussed Bhatti's qualifications, education, and experience and agreed that Bhatti was "a very good candidate for the job." (*Id.* ¶ 34.) Teague then contacted

---

Bhatti's BSEE degree is deemed admitted for the purposes of this motion. Plaintiff's argument that Moss's stated reason was a lie is addressed in the Court's discussion of prextext in Section II.B.

[10] Plaintiff denies Defendant's LR 56.1(a)(3) ¶ 30 by stating "[t]he decision to interview and hire Bhatti instead of Sisto was because Bhatti was substantially younger (31 years old at the time) than Sisto (60 years old at the time)." Pl.'s LR 56.1(b)(3)(B) ¶ 30. Plaintiff cannot deny, however, that one of the stated reasons for interviewing Bhatti was his experience with analog circuitry. The Court addresses whether those stated reasons were a lie, as Plaintiff contends, in its discussion of pretext in Section II.B. The same reasoning applies to Plaintiff's denial of Defendants LR 56.1(a)(3) ¶ 34.

[11] Plaintiff objects to Defendant's LR 56.1(a)(3) ¶ 33 claiming that "Hassan's impression of Bhatti is speculative, and thus, inadmissible." Pl.'s LR 56.1(b)(3)(B) ¶ 33. Plaintiff does not dispute, however, that Teague, Moss, and Hassan interviewed Bhatti on March 2, 2011, nor does Plaintiff dispute Teague and Moss's impressions of Bhatti. Thus, those facts are deemed admitted for the purposes of this motion.

Kapps and informed her that Teague and Moss were impressed with Bhatti and wanted NXP to offer him the FSE position. (*Id.*) On March 8, 2011, Bhatti was sent an offer letter. (*Id.* ¶ 40.[12])

That same day, Sisto spoke with Moss about the FSE position. (*Id.* ¶ 43.) Sisto had learned of the opening from a former co-employee at NXP. (Pl.'s LR 56.1(b)(3)(C) ¶ 13.) The content of the conversation between Moss and Sisto is disputed. NXP contends that Moss told Sisto that Porter had left the company, but that NXP had already identified a candidate, Bhatti, and had offered him the position. (Def.'s LR 56.1(a)(3) ¶ 44.) According to NXP, Moss also told Sisto that NXP would not consider any other candidates for the job unless Bhatti turned down the offer. (*Id.*) In contrast, Sisto contends that Moss told him that there was an open position and that Sisto would be considered for it. (Pl.'s LR 56.1(b)(3)(C) ¶ 17.) Putting aside the disputed contents of the conversation, it is undisputed that on March 8, 2011, Sisto emailed his resume to Moss. (*Id.* ¶ 19.)

Bhatti signed the offer letter on March 11, 2011, and began work as an FSE at NXP on March 28, 2011. (Def.'s LR 56.1(a)(3) ¶ 41.[13]) In October 2011, Sisto sued NXP alleging that he was not rehired because of his age.

---

[12] Plaintiff objects to Defendant's LR 56.1(a)(3) ¶ 40 because "Defendant's Exhibits 13 [Bhatti's offer letter] . . . [is] inadmissible hearsay." Pl.'s LR 56.1(b)(3)(B) ¶ 40. Teague stated in his deposition that he had knowledge that Bhatti was sent an offer letter on March 8, 2011. Teague Dep. 75: 7-10. Thus, the fact that an offer letter of one kind or another was sent to Bhatti on March 8, 2011, is deemed admitted for the purposes of this motion.

[13] Plaintiff objects to Defendant's LR 56.1(a)(3) ¶ 41 stating that "Defendant's Exhibit 16 [Bhatti's signed offer letter] . . . [is] inadmissible hearsay." Pl.'s LR 56.1(b)(3)(B) ¶ 41. Teague stated in his deposition, however, that Bhatti signed an offer letter on March 11, 2011, and started at NXP on March 28, 2011. Teague Dep. 80:20-22, 83:23-84:1. Thus, those facts are deemed admitted for the purposes of this motion.

**Discussion**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has sufficiently demonstrated the absence of a genuine issue of material fact, the nonmoving party must then set forth specific facts showing there are disputed material facts that must be decided at trial. *Id.* at 321-22.

Sisto alleges that NXP engaged in age discrimination in violation of the ADEA. The ADEA prohibits employers from refusing to hire workers who are 40 or older on the basis of their age. 29 U.S.C. § 623(a); § 631; *Martino v. MCI Commc'ns Servs. Inc.*, 574 F.3d 447, 452 (7th Cir. 2009). An ADEA plaintiff "must prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178 (2009). "In other words, proof that the plaintiff's age was a motivating factor, but not a determinative factor, in the employer's decision, will not suffice to establish the employer's liability." *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 961 (7th Cir. 2010).

A plaintiff suing under the ADEA may show age discrimination directly or indirectly, in the latter case through the burden-shifting approach established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Martino*, 574 F.3d at 452. "Because both methods allow the use of circumstantial evidence, however, the distinction is often fleeting." *Id.* "In either case, the bottom-line question is whether the plaintiff has proved intentional discrimination, and therefore much – if not all – of the same evidence is at play." *Id.* (internal citations omitted). Sisto attempts to show age discrimination through both methods. The Court addresses each in turn.

## I. Direct Method

Under the direct method, Sisto must produce either direct or circumstantial evidence that NXP did not hire him because of his age. *See Mach v. Will Co. Sheriff*, 580 F.3d 495, 499 (7th Cir. 2009). "Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009) (quoting *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005)). The Seventh Circuit has recognized that this evidence is rare because it "usually requires an admission from the decisionmaker about his discriminatory animus." *Id.*

Without a direct acknowledgement of discriminatory intent, a plaintiff proceeding under the direct method must put forth a "convincing mosaic" of circumstantial evidence such as:

> (1) suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group;
>
> (2) evidence that the employer systematically treated other, similarly situated employees outside the protected class better; and
>
> (3) evidence that the plaintiff suffered an adverse employment action and that the employer's justification is pretextual.

*Id.* at 1114-15; *see also Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008). The appropriate focus under the direct method "is not whether the evidence offered is 'direct' or 'circumstantial' but rather whether the evidence 'points directly' to a discriminatory reason for an employer's action." *Atanus*, 520 F.3d at 671. Sisto acknowledges that no statements were made to him indicating that NXP discriminated against him because of his age. (Pl.'s Resp. Br. 6.) He claims, however, that he can prove discrimination under the direct method through circumstantial evidence. (*Id.*)

First, Sisto alleges that Mike Bruno, NXP's Vice President of Sales, evidenced an intent to discriminate on the basis of age by remarking at a presentation to Sisto and other sales personnel that NXP's sales force was "too old" and that management needed to "enliven the sales force and reduce the average age." (Pl.'s LR 56.1(b)(3)(C) ¶ 11.) Defendants dispute that Bruno made such comments. At the summary judgment stage, however, the Court must view the facts in the light most favorable to Sisto and must draw all reasonable inferences in Sisto's favor. *See Kuhn v. Goodlow*, 678 F.3d 552, 555 (7th Cir. 2012). Thus, the Court assumes that Bruno made the comments as Sisto alleges.

Even assuming Bruno made the comments, however, a comment can provide an inference of discrimination only if it was (1) made by the decisionmaker, (2) around the time of the decision, and (3) in reference to the adverse employment action. *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007) (internal citations omitted). Bruno's comments fail to meet these requirements. First, Bruno was not the decisionmaker; Teague and Moss decided whom to hire to fill the vacant FSE position. (Def.s' LR 56.1(a)(3) ¶ 34.)

Second, Sisto could not recall when Bruno made these remarks, except that they were made sometime between 2000 and 2008. (Pl.'s LR 56.1(b)(3)(C) ¶ 11; Pl.'s Dep. 111:2 – 115:22.) As the Seventh Circuit has recognized, large gaps of time between a statement and an adverse employment action can destroy an inference of discrimination. *See Dass v. Chi. Bd. of Educ.*, 675 F.3d 1060, 1072 (7th Cir. 2012) (affirming summary judgment for the employer where the alleged discriminatory comments were made "about 10 months before" adverse employment action); *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 721 (7th Cir. 2008) ("comments made three and even two months before the challenged employment action fail to create a reasonable inference of discrimination."); *Hemsworth*, 476 F.3d at 491 (affirming

summary judgment for the employer where alleged discriminatory comments were made "more than a year" before the adverse employment action); *Markel v. Bd of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 910-11 (7th Cir. 2002) (finding supervisor's statements "nearly two months" before employee's termination were not contemporaneous to the termination and thus were not evidence of discrimination). Here, even assuming Bruno made his remarks in November 2008, just before Sisto's departure from NXP, the remarks would have preceded the hiring of Bhatti by more than two years. (Def.'s LR 56.1(a)(3) ¶¶ 9-10, 34.) Such a gap precludes an inference of discrimination.

Lastly, there is no evidence that Bruno's remarks were made in connection with NXP's decision to hire Bhatti and not Sisto. Nor is there any evidence that Teague and Moss were aware of Bruno's comments. Thus, Bruno's remarks fail to create an inference that NXP engaged in age discrimination against Sisto in 2011. *See Hemsworth*, 476 F.3d at 491.

Sisto also contends that he can proceed under the direct method of demonstrating age discrimination because he was "over-qualified" for the FSE position and was "certainly more qualified than Bhatti." (Pl.'s Resp. Br. 6.) Because the evidence to support this argument is substantially similar to the evidence required to prove discrimination under the indirect method, the Court addresses this evidence below in its discussion of that method. *See Silverman v. Bd. of Educ. Of City of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011); *Huff v. UARCO, Inc.*, 122 F.3d 374, 380 (7th Cir. 1997).

## II. Indirect Method

The indirect method requires Sisto to proceed under the burden-shifting approach set forth in *McDonnell Douglas*. *See Martino*, 574 F.3d at 452. The *McDonnell Douglas* test requires that, to survive summary judgment, Sisto must establish a *prima facie* case of age

discrimination by showing that: (1) he was over 40; (2) he sought a position for which he was qualified; (3) he was not hired; and (4) a substantially younger person who was similarly situated was hired in his place. *Sembos v. Philips Components*, 376 F.3d 696, 700 (7th Cir. 2004). If Sisto makes this *prima facie* showing, the burden of production shifts to NXP to articulate a legitimate, non-discriminatory reason for not hiring Sisto. *See Martino*, 574 F.3d at 453. If NXP can articulate such a reason, the burden shifts back to Sisto to show that the NXP's stated reason is a pretext for discrimination. *See id.*

It is undisputed that Sisto satisfies the first and third prongs of the *prima facie* case. In March 2011, he was 60 years old, and NXP did not hire him for the FSE position. (Pl.'s LR 56.1(b)(3)(C) ¶ 1; Def.'s LR 56.1(a)(3) ¶ 4.) NXP argues, however, that Sisto has failed to create a triable issue of fact as to prongs two and four because Sisto cannot establish that he was qualified for the FSE position or that Bhatti was similarly situated to him. The Court agrees with the latter point. Because Sisto cannot establish the fourth prong of his *prima facie* case and, therefore, cannot survive summary judgment, the Court need not address prong two.

### A. Similarly-Situated

Under the fourth prong of his *prima facie* case, Sisto must establish that NXP failed to hire him and instead hired "a substantially younger person who was similarly situated." *Sembos*, 376 F.3d at 700. In determining whether employees are similarly situated, a court must look at all relevant factors, the number of which depends on the context of the case. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). In failure-to-hire cases, plaintiffs are required to show "at a minimum that the [allegedly similarly situated] employees possessed analogous attributes, experience, education, and qualifications relevant to the positions sought." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610-11 (7th Cir. 2006) (quoting *Radue*, 219 F.3d at 618)).

Here, Sisto and Bhatti were not similarly situated. First, Bhatti had a BSEE degree, Sisto did not. (Def.'s LR 56.1(a)(3) ¶¶ 5, 29.) It is undisputed that, beginning in 2009, NXP sought to bring in a more technical sales force, and FSEs were expected to provide technical expertise and knowledge to customers and their engineers. (*Id.* ¶¶ 12, 29.) Indeed, the 2011 requisition form for the FSE position stated that the position required an "[e]ngineering background," including a "BSEE equivalent" degree. (*Id.* ¶ 32.)

Additionally, Bhatti had education and employment experience with analog circuitry. (*Id.* ¶ 30.) He graduated from college with a concentration in "Analog IC [Integrated Circuit] Design" and NXP had just rebranded itself as a High Performance Mixed Signal company, which meant that its workforce needed expertise in both digital and analog circuitry. (*Id.*) As of February 2011, the employees in NXP's Central Region primarily had experience with digital circuitry. (*Id.*) Thus, Teague and Moss felt that Bhatti's analog experience would be "very complimentary" to the existing workforce. (*Id.*) The summary judgment record contains no evidence that Sisto had similar experience with analog circuitry.

Finally, it is undisputed that Bhatti had worked at Texas Instruments continuously for nearly five years immediately prior to joining NXP. Sisto, by contrast, had not worked in the semiconductor industry for nearly two and a half years proceeding March 2011. (Def.'s LR 56.1(a)(3) ¶¶ 27, 49.) For these reasons, Sisto has failed to establish that he and Bhatti "possessed analogous attributes, experience, education, and qualifications." *Raymond*, 442 F.3d at 610-611.[14] He therefore cannot establish a *prima facie* case of age discrimination.

---

[14] Sisto argues that not only was he similarly situated to Bhatti, but also that he was more qualified than Bhatti for the FSE position. The Court addresses this argument in its discussion of pretext in Section II.B.

## B. Pretext

Even if Sisto could establish a *prima facie* case, his claims cannot proceed for an independent reason: NXP has provided legitimate, nondiscriminatory reasons for not hiring him, and Sisto has not presented any evidence that these reasons are a pretext for age discrimination. Under the *McDonnell Douglas* burden-shifting analysis, assuming that Sisto had made a *prima facie* showing, the burden would shift to NXP to articulate a legitimate, non-discriminatory reason for not hiring him. *See Martino*, 574 F.3d at 452. If NXP offers a legitimate, nondiscriminatory reason for not hiring him, Sisto can survive summary judgment only by proving that NXP's legitimate, nondiscriminatory reason is merely a pretext for discrimination. *See Id.* In this context, pretext "means a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000). If NXP honestly believed the reasons it gave for not hiring Sisto, Sisto cannot establish pretext, even if NXP's reasons were "mistaken, cruel, unethical, out of [its] head, or downright irrational." *See Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 418 (7th Cir. 2006). Moreover, in order to show pretext, Sisto must specifically rebut *each* nondiscriminatory reason NXP has given. *See Fischer v. Avanade, Inc.*, 519 F.3d 393, 403-04 (7th Cir. 2008) (citing *Russell v. Acme-Evants Co.*, 51 F.3d 64, 69-70 (7th Cir. 1995)). Merely, showing that one of multiple reasons is pretextual is not enough to survive summary judgment. *Id.*

Here, NXP contends that Sisto was not hired because it had already offered the position to Bhatti, and Bhatti was more qualified. (Def.'s Reply 12-13.) Sisto argues that these reasons are pretextual and that he was really not hired because of his age.

Turning first to NXP's argument that the FSE position was not open when Sisto inquired about it, there is a dispute about Sisto's March 8, 2011, conversation with Moss in which Moss

14

and Sisto discussed the FSE position at issue. Sisto, who had learned about the position from a former co-employee at NXP, contends that Moss told him that the position was open and that Sisto would be considered for it. (Pl.'s LR 56.1(b)(3)(C) ¶¶ 13,17.) According to NXP, Moss told Sisto that Porter had left the company, but that NXP had already identified a candidate and offered him the position. (Def.'s LR 56.1(a)(3) ¶ 44.) NXP further contends that Moss then told Sisto that NXP would not consider other candidates for the job unless that candidate, Bhatti, turned down the offer. (*Id.*) Viewing the facts in a light most favorable to Sisto, as the Court must do, *see Kuhn*, 678 F.3d at 555, the Court assumes that Moss told Sisto that the position was open when they spoke on March 8, 2011. Thus, at this stage, Sisto creates a triable issue as to whether NXP's stated reason for not hiring Sisto – that the FSE position was not open when he inquired about it – was pretextual.

This, however, is not the end of the inquiry. In order to survive summary judgment, Sisto must also rebut the other nondiscriminatory reason NXP provides for not hiring him, namely that Bhatti was more qualified for the position. *See Fischer*, 519 F.3d at 403-04. Specifically, NXP argues it hired Bhatti because: (1) his technical skills, including his BSEE degree, enabled him to work with customers directly on the design process, in line with NXP's restructuring efforts; (2) Bhatti's educational and work experience in analog circuitry fit NXP's business needs in the Central Region; (3) Bhatti came highly recommended by Hassan, whom Moss and Teague respected and trusted; and (4) Teague and Moss were "very impressed" with Bhatti's personality and technical knowledge when they interviewed him. (*Id.*)

Sisto argues that all of these reasons are mere pretext for age discrimination because he was "over-qualified" for the FSE position and was "certainly more qualified than Bhatti." (Pl.'s Resp. Br. 6.) In support, Sisto notes that Bhatti had just graduated from college in 2004,

15

whereas Sisto "had worked in the industry and was involved in the design and sale of semiconductors since 1973," had "gr[own] a $50 million dollar sales account to a $100 million dollar sales account," and "had an Associate's degree in electronics engineering technology." (Pl.'s Resp. Br. 6-7.)

The Seventh Circuit has emphasized, however, that the qualifications required for a job are set by the employer, not the employee or the courts. *See Schaffner v. Glencoe Park Dist.*, 256 F.3d 616, 620 (7th Cir. 2001) ("What the qualifications for a position are, even if those qualifications change, is a business decision, one courts should not interfere with. We do not tell employers what the requirements for a job must be.") (quoting *Gorence v. Eagle Food Ctrs.*, 242 F.3d 759, 765 (7th Cir. 2001)); *Ceruitti*, 349 F.3d at 1064 ("Employers, not employees or courts, are entitled to define the core qualifications for a position, so long as the criteria utilized by the company are of a nondiscriminatory nature.") Moreover, it is the province of the employer to determine which candidates are more qualified for a job, and the employer is entitled to rely on subjective criteria in making that determination, so long as it is not based upon a discriminatory animus. *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 813 (7th Cir. 2005).

Here, as long as NXP did not base its hiring decision on a prohibited animus, NXP was entitled to determine the qualifications for the FSE position that became available in 2011, the weight to be given to those qualifications, and who best met those qualifications. Nothing about Bhatti's hiring process suggests that NXP acted for a prohibited reason or did not honestly believe that Bhatti was well qualified for the job. NXP wanted to recruit a more technically proficient sales force and the requisition form for the FSE position reflected that. (Def.'s LR 56.1(a)(3) ¶¶ 12, 17, 32.) Bhatti had a BSEE and technical work experience, including experience in analog circuitry. (*Id.* ¶¶ 29-30.) Moss and Teague, who were in charge of filling

the position, asked Hassan, a respected and trusted employee who would be working with the new hire, for recommendations, and Hassan recommended Bhatti, who impressed Teague and Moss on paper. (*Id.* ¶¶ 27-30.) Teague and Moss then interviewed Bhatti, who impressed them in person, and Bhatti was offered the job. (*Id.* ¶¶ 33-34.) There is no evidence to suggest that NXP did not honestly believe its stated reasons for hiring Bhatti at any stage during the hiring process.

In this vein, it is also important to note that "where an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the applicants' competing qualifications does not constitute pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180 (7th Cir. 2002) (internal quotations omitted). In other words, "[i]n effect, the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Id.* at 1180-81.

The Seventh Circuit explained that "[t]his makes sense because a court's role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second-guesses employers' business judgments." *Id.* at 1181. Indeed, "[n]o matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [the ADEA] does not interfere," absent prohibited conduct. *Id.* (internal quotations and citations omitted). Rather, courts "must respect the employer's unfettered discretion to choose among qualified candidates." *Id.*

Sisto has failed to establish that his credentials are so superior to Bhatti's that no reasonable person, in the exercise of impartial judgment, would have chosen Bhatti over Sisto for the FSE position in 2011. Sisto's own belief that he was more qualified than Bhatti is insufficient to demonstrate pretext. *See Hall v. River Forest*, 536 F.3d 615, 620 (7th Cir. 2008) ("an employee's own subjective belief that she is as qualified or more qualified than another applicant is insufficient"); *Johnson v. Nordsrtom, Inc.*, 260 F.3d 727, 733 (7th Cir. 2001) (job applicant's subjective belief that she was better qualified than the individual hired for the job was insufficient on its own to demonstrate pretext). Furthermore, Sisto admitted that he has no first-hand knowledge of the duties that Porter performed between 2008 and late-February 2011, he had never met or spoken with Bhatti, and he has no personal knowledge of Bhatti's actual job duties. (Def.'s LR 56.1(a)(3) ¶¶ 48, 50.) Thus, Sisto cannot demonstrate that Bhatti's qualifications were not the actual motivation for NXP's decision to hire Bhatti and, therefore, cannot meet his burden to establish that NXP's stated reasons were pretext.[15]

---

[15] Sisto contends that NXP's claim that a BSEE degree was required for the FSE position is a lie because NXP hired two FSEs who did not have a BSEE degree and NXP converted Account Managers who did not have BSEE degrees to the FSE position. (Pl.'s Resp. Br. 12.) The Court need not address this argument because Sisto cannot demonstrate that Bhatti's qualifications were not the actual reason NXP hired Bhatti, and Sisto must rebut each legitimate, nondiscriminatory reason a defendant gives for taking an employment action. *See Fischer*, 519 F.3d at 403-04. But even if a BSEE degree were not required for the FSE position, as Sisto contends, Sisto has failed to show that Bhatti's other qualifications, including his technical skills, educational and work experience in analog circuitry, recommendation from Hassan, and "impressive" personality and technical knowledge that Teague and Moss observed in their interview, were not the actual reasons that NXP hired Bhatti.

**III. Conclusion**

For the reasons herein, the Court grants NXP's motion for summary judgment [23]. This case is hereby terminated.


**SO ORDERED**                    ENTER: **3/7/13**

_____
**JOHN Z. LEE
U.S. District Judge**